1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KASSIM ABDULKHALIK, Individually,<br><br>                                        Plaintiff,<br><br>        vs.<br><br><br>CITY OF SAN DIEGO, SERGEANT JOEL MCMURRIN, and DOES 2-20, inclusive,<br><br>                                        Defendant. | CASE NO. 08CV1515-MMA (NLS)<br><br>**ORDER:**<br><br>**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT;**<br><br>[Doc. No. 44]<br><br>**DENYING PLAINTIFF'S EX PARTE MOTION FOR LEAVE TO FILE A SUR-REPLY**<br><br>[Doc. No. 55] |

On August 18, 2008, Plaintiff Kassim Abdulkhalik filed the instant action alleging violations of his constitutional rights under 42 U.S.C. § 1983, as well as various state law causes of action. Plaintiff's claims arise out of an incident between Plaintiff and Sergeant Joel McMurrin of the San Diego Police Department in the early morning hours of August 22, 2007. Pending before the Court is Defendants' Motion for Summary Judgment. (Doc. No. 44.) For the reasons set forth herein, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment.

<u>**BACKGROUND**</u>

The following facts are not in dispute. At the time of the events in question, Plaintiff was a 20-

year-old college student attending San Diego State University ("SDSU"). On August 21, 2007, Plaintiff and four friends, Courtney Weisheit Braverman, Zach McBeth, Andrew Envent, and Jennifer Rogers, attended a house party across the street from McBeth and Envent's house. Plaintiff admitted that he drank one beer prior to arriving at the party and drank two beers while at the party. At approximately 1 a.m. on August 22, 2007, Police officers, including Defendant McMurrin, responded to a radio call concerning the party and subsequently disbanded the party for noise violations. Plaintiff and his four friends left the house and began walking back to Envent and McBeth's house. McMurrin was the last officer to leave the scene of the party. As McMurrin was driving away, Envent shouted something at him. McMurrin stopped his car, got out, and began walking toward the group. At some point, McMurrin asked the three men to step toward his squad car. Envent and McBeth complied with the request, but Plaintiff did not. Instead Plaintiff began walking to Envent and McBeth's house. At some point thereafter, McMurrin took Plaintiff down to the ground using a headlock. Once Plaintiff was on the ground, McMurrin called for backup. Officers Brett Davis and David Rozsa arrived on the scene. McMurrin informed the officers that Plaintiff was in violation of California Penal Code § 647(f) for being drunk in public. Officers Davis and Rozsa took Plaintiff to the City's Inebriate Reception Center ("Detox") located in Downtown San Diego, and he was later released around 6 a.m. After his release, Plaintiff sought medical treatment for injuries to his face and head. No charges were ever filed.

On August 18, 2008, Plaintiff filed the instant action against Defendant City of San Diego. (Doc. No. 1.) On December 29, 2008, Plaintiff filed an amended complaint ("FAC"), adding McMurrin as a named Defendant. (Doc. No. 12.) Plaintiff alleges that McMurrin violated 42 U.S.C. § 1983 by violating Plaintiff's Fourth Amendment Rights to be free from unlawful detention and excessive force. In addition, Plaintiff asserts that McMullen violated his Fourteenth Amendment right to not be deprived of medical care. Plaintiff also alleges that the City of San Diego violated 42 U.S.C. § 1983 by "ratifying and condoning the violation if its citizens' constitutional rights" (the "*Monell* claim"). Finally, Plaintiff alleges various state law causes of action.

On July 18, 2009, Defendants filed the instant Motion for Summary Judgment and Motion to

1  Dismiss[1]. (Doc. No. 44.) On August 10, 2009, Plaintiff filed his Opposition to the motions. (Doc. No.

2  51.) On August 17, 2009, Defendants timely replied. (Doc. No. 53.)

3                                                  **ANALYSIS**

4  **1.      Motion for Summary Judgment**

5              *A.      Legal Standard*

6          A moving party is entitled to summary judgment only if the moving party can demonstrate that

7  (1) "there is no genuine issue as to any material fact," and (2) he is "entitled to judgment as a matter

8  of law." Fed R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material issue of

9  fact is one that raises a question that a trier of fact must answer to determine the rights of the parties

10  under the substantive law that applies. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A

11  dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the

12  nonmoving party." *Id.* at 248. The initial burden is on the moving party to show that both prongs are

13  satisfied. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by

14  presenting evidence that negates an essential element of the nonmoving party's case; or (2) by

15  demonstrating that the nonmoving party failed to make a showing sufficient to establish an element

16  essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23.

17  If the moving party fails to discharge this initial burden, summary judgment must be denied, and the

18  court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

19  159–60 (1970).

20          If the moving party meets this initial burden, the nonmoving party cannot defeat summary

21  judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts."

22  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Anderson*, 477 U.S.

23  at 252 ("The mere existence of a scintilla of evidence in support of the nonmoving party's position

24

25          [1]Although the City seeks dismissal of Plaintiff's *Monell* claim pursuant to Federal Rule of
   Civil Procedure 12(b)(6), such a request is improper at this stage in the proceedings. Motions made
26  pursuant to Rule 12(b)(6) "shall be made before pleading if a further pleading is permitted." Fed. R.
   Civ. P. 12(b). The Ninth Circuit has held that motions to dismiss for failure to state a claim made after
27  the pleadings are closed must be construed as motions for judgment on the pleadings under Rule 12(c).
   *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). Here, Defendants, including the City,
28  answered the FAC on February 5, 2009. (Doc. No. 19.) Thus, because the City makes this motion after
   the pleadings have closed, the Court construes it as a Rule 12(c) motion for judgment on the pleadings.

is not sufficient."). Rather, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (*quoting* Fed. R. Civ. P. 56(e)). The inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1180 (9th Cir. 2002). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

> B.      *Violation of 42 U.S.C. § 1983 by Defendant McMurrin*

Plaintiff alleges that McMurrin deprived him of his constitutional rights in violation of 42 U.S.C. § 1983. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Plaintiff alleges that McMurrin violated 42 U.S.C. § 1983 when he (1) violated his Fourth Amendment right to not be detained without probable cause; (2) violated his Fourth Amendment right to be free from excessive force; and (3) violated his Fourteenth Amendment right not be deprived of medical care. Defendant McMurrin contends that he is entitled to qualified immunity on the first two claims, and that Plaintiff fails to demonstrate that a genuine issue of material fact exists as to the third claim.

> 1.      *Qualified Immunity*

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009). The doctrine grows out of the policy concern that few individuals would enter public service if they risked personal liability for their official decisions. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity shields an officer from suit when []he makes a decision that, even if

constitutionally deficient, reasonably misapprehends the law governing the circumstances []he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). Recently in *Pearson v. Callahan*, the Supreme Court modified the two-step sequence for resolving government officials' qualified immunity claims first set forth in *Saucier v. Katz*, 533 U.S. 194, 198 (2001). Under *Saucier*, courts were required to undertake a two-part inquiry in determining whether a government official was entitled to qualified immunity. *Id.* at 201. First, the court examines whether the facts a plaintiff alleges shows the officer's conduct violated a constitutional right. *Id.* Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, *supra*, 192 S. Ct. at 816 (quoting *Saucier*, *supra*, 533 U.S. at 201). The first inquiry is a question of fact and the second is a question of law. *Tortu v. Las Vegas Police Dep't*, 556 F.2d 1075, 1085 (9th Cir. 2009). In *Pearson*, the Supreme Court held that the two-step inquiry was no longer a mandatory "inflexible requirement" in which step one must be considered before step two. *Id.* at 813. Rather, district courts have discretion to determine the order in which these inquiries take place. *Id.* at 818.

Defendant McMurrin asserts that he is entitled to qualified immunity because Plaintiff has not established any violation of a constitutional right. In addition, McMurrin contends that even if Plaintiff has adequately established violation of a constitutional right, the constitutional right was not clearly established.

### a. Unlawful Detention

Plaintiff first alleges that McMurrin violated 42 U.S.C. § 1983 because he arrested Plaintiff for violation of penal code § 647(f) without probable cause. McMurrin asserts that he is entitled to qualified immunity on this claim. Thus, under *Saucier* and *Pearson*, the question is whether McMurrin violated a clearly established Fourth Amendment right not to be arrested without probable cause. The Ninth Circuit has explained that an arrest is with "probable cause" only if the "facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, [to believe] in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir. 1986) (quoting *Michigan v. De Filippo*, 443 U.S. 31, 37 (1979)). The question of whether a reasonable officer could have believed probable cause existed to justify the arrest is essentially a legal question. *Mitchell v.*

1   *Forsyth*, 472 U.S. 511, 530 (1985). However, where a genuine dispute of material fact exists in terms

2   of the qualified immunity question, the issue must proceed to the jury. *Act Up!/Portland v. Bagley*,

3   988 F.2d 868, 873 (9th Cir. 1993).

4          Section 647(f) of the California Penal Code states in pertinent part:

5
6          Every person who commits any of the following acts is guilty of disorderly conduct,
           a misdemeanor:

7          . . .

8          (f) Who is found in any public place under the influence of intoxicating liquor, any
           drug, controlled substance, toluene, or any combination of any intoxicating liquor,
9          drug, controlled substance, or toluene, in a condition that he or she is unable to
           exercise care for his or her own safety or the safety of others, or by reason of his or her
10         being under the influence of intoxicating liquor, any drug, controlled substance,
           toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes with
11         or obstructs or prevents the free use of any street, sidewalk, or other public way.

12   Cal. Penal Code § 647(f). San Diego Police Officer Saben Abrams stated in his deposition testimony

13   that the elements of a Section 647(f) violation are established if the person is: (1) in a public place,

14   (2) intoxicated, and (3) unable to care for his own safety or the safety of others. (*Abrams Depo.* at

15   47:5–9.) Abrams described the third element as the most critical because "that's the danger that the

16   statute seeks to prevent." (*Id.* at 47:14–17.)

17          McMurrin contends that he had probable cause to arrest Plaintiff for being drunk in public

18   based on Plaintiff's "unsteady gait" and "slurred words," as well as Plaintiff's refusal to follow

19   McMurrin's directions. Plaintiff and his four friends, who were all at the scene, testified that Plaintiff

20   was not drunk when McMurrin arrested him. Moreover, the testimony of Officers Davis and Rozsa

21   tend to contradict McMurrin's observations. Officer Rozsa, who assisted McMurrin in escorting

22   Plaintiff to the squad car after arriving on the scene, did not remember Plaintiff exhibiting an unsteady

23   gait. (*Rozsa Depo.* at 62:21–23.) Officer Davis also testified that he did not recall how Plaintiff was

24   walking. (*Davis Depo.* at 52:13–15.)[2] In addition, Officers Davis and Rozsa stated that they did not

25   recall Plaintiff having slurred speech, nor is slurred speech noted in the "probable cause" section of

26

27          [2]The Court notes that in his declaration in support of the Defendants' Motion for Summary
     Judgment, Officer Davis states that he observed Plaintiff walking with an "unsteady gait," which
28   directly contradicts his testimony at his deposition. (*Davis Decl.* at 3:8–9.) A party cannot create an
     issue of fact through introducing a declaration that contradicts the declarant's prior deposition
     testimony. *See Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).

the arrest report. (*Burlison Decl.*, Ex. D; *Rozsa Depo.* at 80:5–6; *Davis Depo.* at 52:10–12.) McMurrin attempts to minimize the observations of Officers Davis and Rozsa on grounds that their observations occurred sometime after his own. (*Defs.' Reply* [Doc. No. 53] at 4:10–5:2.) However, it appears from the evidence that Officers Davis and Rozsa appeared only five to ten minutes after McMurrin arrested Plaintiff, thus their observations on Plaintiff's speech and gait are probative on the issue.

The Court notes that McMurrin then attempts to bolster his probable cause determination with the observations by Officers Davis and Rozsa that Plaintiff had alcohol on his breath and bloodshot, glassy eyes with dilated pupils. (*Defs.' Reply* [Doc. No. 53] at 5 n.5.) However, McMurrin did not make these observations himself. Thus, those particular observations of the responding officers are not relevant to our inquiry here. *See United States v. Greene*, 783 F.2d 1364, 1367 (9th Cir. 1986) ("the test for probable cause is whether facts and circumstances *within the officer's knowledge* . . . are sufficient to warrant a prudent person . . . [to believe] . . . that the suspect has committed, is committing or is about to commit an offense." (internal quotation marks omitted and emphasis added)).

Finally, Plaintiff asserts that there is no evidence supporting the third element of a Section 647(f) violation, which requires that the suspect is unable to care of his own safety or the safety of others. As Officer Abrams pointed out, a person may not be arrested merely for being intoxicated in public. (*Abrams Depo.* at 52:1–10.) Other than the conclusory statement by McMurrin that he thought Plaintiff was unable to care for his own safety, there is no evidence that this opinion was related to any of McMurrin's observations or that this opinion was reasonable. Taking into account the lack of evidentiary support for McMurrin's determination that Plaintiff was unable to care for his own safety, the inconsistencies between McMurrin's observations and those of Officers Davis and Rozsa, and the eye witnesses' observations that Plaintiff was not drunk, the Court finds that there is a triable issue of fact as to the facts and circumstances within McMurrin's knowledge at the time he decided to arrest Plaintiff for a Section 647(f). Accordingly, because the Court cannot conclude at this time that McMurrin is unequivocally entitled to qualified immunity, the Court hereby **DENIES** Defendants' motion for summary judgment on Plaintiff's claim that McMurrin arrested him without probable cause.

b.      *Excessive Force*

Plaintiff's next claim under Section 1983 arises out of an alleged violation of his Fourth Amendment right to be free from excessive force. Defendant asserts that he is entitled to qualified immunity on this claim. In *Graham v. Connor*, the Supreme Court held that an excessive force claim must be analyzed under the Fourth Amendment and its "reasonableness" standard. 490 U.S. 386, 395 (1989). Thus, under the reasonableness standard, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. In assessing an excessive force claim and determining whether force was reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Conner*, 490 U.S. 386, 396 (1989). To determine the nature and quality of the intrusion, the court must evaluate the type and amount of force inflicted. *Jackson v. City of Bremerton*, 268 F.3d 646, 651–52 (9th Cir. 2001). To assess the governmental interests at stake, the court should consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, *supra*, 490 U.S. at 396.

Plaintiff's excessive force claim is two-pronged. First, he asserts that McMurrin used excessive force when he used a headlock to take Plaintiff to the ground. Second, he asserts that McMurrin used excessive force when he slammed Plaintiff's head into the concrete ground after Plaintiff was prone and under control.

i.      *The Takedown*

In the police report, McMurrin stated that he told Plaintiff three times to stop walking away, but Plaintiff refused. (*Burlison Decl.* at Ex. D.) McMurrin states that he then "walked up behind Abdulkhalik and attempted to stop him by grabbing him by the arm, [and] he pulled away." (*Id.*) McMurrin states that he told Plaintiff to stop as he attempted to grab him by the arm again, after which "Abdulkhalik began to struggle." (*Id.*) McMurrin later described the "struggle" as Plaintiff pulling his arm away or "tensing" his arm. (*McMurrin Depo.* at 115:16–116:22.) McMurrin then stated in the report that at that point he was "forced to take Abdulkhalik to the ground using a headlock to control

1   him." (*Burlison Decl.* at Ex. D.)

2         According to the San Diego Police Department's use-of-force policy, a takedown is considered

3   a "greater controlling force" that is appropriate only if the subject is engaged in active resistance.

4   (*Burlison Decl.*, Ex. E at 3 (defining when "greater controlling force" is permitted).) The San Diego

5   Police Department's use-of-force policy defines passive resistance as "behavior that consists of a

6   refusal to comply with verbal commands and does not convey a threat to the officer or another

7   person." (*Burlison Decl.*, Ex. E at 2.) Active resistance, on the other hand, is defined in the policy as

8   "behavior that consists of a refusal to comply with verbal commands and conveys a threat to the

9   officer or another person, or consists of physical opposition to attempts of control by the officer." (*Id.*)

10         Plaintiff contends that he was passively resisting when McMurrin used a headlock to take him

11   to the ground. McMurrin, on the other hand, contends that Plaintiff became an active resister when

12   McMurrin grabbed Plaintiff and Plaintiff tensed his arm. Plaintiff does not dispute that he tensed his

13   arm, but states that he did this instinctively when McMurrin grabbed him by surprise. (*Abdulkhalik*

14   *Depo.* 37:5–9.) McMurrin testified that he has had suspects tense their arms if they are startled, and

15   readily admitted that Plaintiff never looked behind him to notice his approach. (*McMurrin Depo.* at

16   117:4–17.) Moreover, McMurrin admitted that he did not perceive Plaintiff to be a physical threat, nor

17   did he believe Plaintiff took a "combative stance," when McMurrin took him to the ground. (*Id.* at

18   122:6–9; 165:10–12.) McMurrin, however, points to the deposition testimony of Sergeant Romeo de

19   los Reyes to support his use of "greater controlling force" in the form of a takedown. (*Reply* at

20   6:15–22.) During his deposition, de los Reyes testified that use of a takedown would be appropriate

21   where the officer tells a passive resister to put his hands behind his back, the passive resister says no,

22   the officer puts the passive resister's hands behind his back, but the passive resister "tighten[s] up."

23   (*de los Reyes Depo.* at 54:6–55:5.) Regardless of why Plaintiff pulled his arm away, McMurrin's

24   belief that Plaintiff became an active aggressor when he pulled his arm away was reasonable. An

25   officer under similar circumstances could have reasonably interpreted Plaintiff's actions as physical

26   opposition to attempts of control, thus elevating him to an active aggressor.

27         Plaintiff next contends that Defendants' use of force was excessive because a headlock is not

28   an appropriate takedown technique. (*Pl.'s Opp.* at 12:3–7.) The Court finds that the evidence does not

1   support this assertion. Contrary to Plaintiff's assertion, de los Reyes did testify that he had taught a
2   "modified" headlock takedown. (*de los Reyes Depo.* at 70:23–73:18.) In his deposition, de los Reyes
3   also testified: "No one has a corner on the market on any method. A takedown is a takedown. How
4   the takedown occurs depends on the circumstances." (*Id.*) Thus, the Court finds that McMurrin's use
5   of a headlock to take Plaintiff to the ground does not render his actions unreasonable. Moreover, the
6   Court notes that there were four other individuals on the scene and McMurrin was alone. The Court
7   finds that it was reasonable for McMurrin to consider a takedown to be the most expeditious means
8   of dealing with the situation and ensuring his own safety. Based on the foregoing, the Court finds that
9   McMurrin's actions in taking plaintiff to the ground using a headlock were objectively reasonable and
10  he is entitled to qualified immunity on this claim. Accordingly, the Court hereby **GRANTS**
11  Defendant's summary judgment on Plaintiff's excessive force claim based on the takedown.

12                              *ii.    Slamming Plaintiff's Head on the Ground*

13          Plaintiff also contends that McMurrin used excessive force when he slammed Plaintiff's head
14  on the ground after he was prone and under control. Plaintiff, as well as three of the eye witnesses,
15  stated that McMurrin had Plaintiff on the ground with his hands behind his back when they heard
16  McMurrin say, "It's about to get a whole lot worse," and saw him then slam Plaintiff's head into the
17  ground. (*Braverman Depo.* at 31:12–32:14; *Envent Depo.* at 30:23–31:6; *McBeth Depo.* at 32:10–14.)
18  All of the eyewitnesses testified that they could not remember Plaintiff struggling with or being
19  disrespectful to McMurrin after the takedown and immediately prior to the head slam. (*Rogers Depo*.
20  23:8–23, 25:9–13; *McBeth Depo*. at 32:23–33:2; *Braverman Depo.* at 32:19–23; *Envent Depo*. at
21  30:14–22.) McMurrin also admitted that after the takedown, Plaintiff was fully cooperative.
22  (*McMurrin Depo.* at 126:16–23, 129:1–3, 130:5–7, 133:5–15.) McMurrin, however, denies that he
23  slammed Plaintiff's head into the ground. (*McMurrin Depo*. at 130:10–131:8.)

24          In his reply brief, McMurrin essentially concedes that there is a triable issue of fact as to
25  whether McMurrin slammed Plaintiff's head into the ground. (*Reply* at 127:25–8:2.) The law is clear
26  that use of force where no force is necessary amounts to a violation of one's Fourth Amendment right
27  to be free from excessive force. This right is clearly established. *See P.B. v. Koch*, 96 F.3d 1298, 1304
28  (9th Cir. 1996). In light of the foregoing, the Court finds that McMurrin is not entitled to qualified

immunity on this claim. Accordingly, the Court hereby **DENIES** Defendants' motion for summary judgment on the excessive force claim to the extent it is based on McMurrin allegedly slamming Plaintiff's head into the ground after Plaintiff was fully compliant.

>    2.    *Genuine Issue of Material Fact on Plaintiff's Deliberate Indifference Claim*

Plaintiff's final claim against McMurrin under 42 U.S.C. § 1983 is based on Plaintiff's allegations that McMurrin was deliberately indifferent to Plaintiff's need for medical attention.[3] Defendant asserts that there was no violation of Plaintiff's Fourteenth Amendment right to medical care. (*Defs.' Mot. to Dismiss* at 17:4–19:21.)

Claims of deliberate indifference brought by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).[4] The Ninth Circuit, however, has explained that district courts assessing such claims shall look to prisoner's rights under the Eighth Amendment, because "[w]ith regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes . . . ." *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996)). The Eighth Amendment prohibits punishments that "'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). In *Estelle*, the Supreme Court held that "deliberate indifference to serious medical needs . . . constitutes . . . 'unnecessary and wanton infliction of pain' . . . ." *Estelle*, *supra*, 429 U.S. at 104 (quoting *Gregg*, *supra*, 428 U.S. at 173)). In order to assess a deliberate indifference claim,

---

[3]The Court notes that in the FAC, Plaintiff alleges that McMurrin's deliberate indifference violated Plaintiff's Fourth and Fourteenth Amendment rights. As noted, however, Plaintiff's claim of deliberate indifference is only cognizable under the Fourteenth Amendment. Thus, to the extent McMurrin seeks summary judgment on the Fourth Amendment aspect of this claim, the motion for summary judgment is **GRANTED**.

[4]The Court notes that in his Reply brief, McMurrin raises the argument that he is entitled to qualified immunity on Plaintiff's deliberate indifference claim. (*Reply* at 1:5–9, 4:3–6.) It is clear from the motion to dismiss that McMurrin's argument for qualified immunity applied only to Plaintiff's claims for unlawful arrest and excessive force, and that this is a new argument. "The district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) (citing *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003)). Accordingly, the Court shall not address the merits of McMurrin's qualified immunity argument. The Court notes that Plaintiff has filed an Ex Parte Motion for Leave to File a Sur-Reply to address Defendant's qualified immunity argument (Doc. No. 55). Because the Court declines to address the merits of Defendant's new argument, the Court hereby DENIES Plaintiff's Ex Parte Motion for Leave to File a Sur-Reply.

the plaintiff must demonstrate that he had a serious medical need, and that the defendant acted with deliberate indifference to that need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.2d 1133, 1136 (9th Cir. 1997) (en banc).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* at 1059 (quoting *Estelle*, 429 U.S. at 104). "Examples of serious medical needs include 'the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Lopez v. Smith*, 203 F.3d 1122, 1132–33 (9th Cir. 2000) (quoting *McGuckin*, 974 F.2d at 1059–60). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment . . . ." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). However, an "inadvertent failure to provide adequate medical care" alone does not state a claim under § 1983." *Id.* (citation omitted). The plaintiff need not show that the harm was substantial, although doing so would provide support for his claim of deliberate indifference. *Id.*

Here, Plaintiff asserts that he had a serious medical need after his arrest as a result of McMurrin slamming his head into the ground. The evidence demonstrates that the officers documented Plaintiff's head wounds in the arrest report. (*Burlison Decl.* at Ex. D.) The evidence also demonstrates that Plaintiff asked Officers Davis and Rozsa if his face was injured, and when they responded affirmatively, Plaintiff asked if a nurse was available. (*Burlison Decl.* at Ex. D; *Davis Depo.* at 67:19–68:2; *Rozsa Depo.* at 82:1–12.) After he was released from detox, Plaintiff sought treatment at SDSU's health center. Dr. Wessel diagnosed Plaintiff with a concussion and cervical injury. (*Burlison Decl.*, at Ex. A.) Determining that Plaintiff needed further medical assessment, Dr. Wessel placed Plaintiff in a hard collar and on a back board and called the paramedics, who transported Plaintiff by ambulance to Scripps Mercy Hospital. (*Id.*) After conducting a full examination, including several CT Scans, Dr. Davis at Scripps diagnosed Plaintiff with "blunt head trauma" and cervical strain. (*Burlison Decl.*, at Ex. B.)

McMurrin attempts to minimize Plaintiff's injuries by citing evidence that the CT scan results were normal, and there was no indication of bleeding, no need for stitches, and no medication dispensed. In addition, McMurrin notes, "Plaintiff's entire stay at the hospital was less than two hours." (*Defs.' Mot. to Dismiss* at 19:3–15.) As previously noted, however, the plaintiff need not show that the harm was substantial. *See Jett*, *supra*, 439 F.3d at 1096. There were visible injuries to Plaintiff's face, Plaintiff found the injuries "important and worthy of comment and treatment," and once released from detox, Plaintiff sought treatment from a medical provider. The Court finds that this evidence is sufficient to raise a triable issue of fact that Plaintiff had a serious medical need as a direct result of his arrest.

Defendant next asserts that there is no genuine issue of material fact as to whether McMurrin acted with deliberate indifference because McMurrin was "completely unaware that Plaintiff sustained any injuries whatsoever." (*Defs.' Mot. to Dismiss* at 19:16–21.) Plaintiff, however, asserts that McMurrin violently slammed Plaintiff's head into the concrete ground after he was prone, under control, and cooperative. (*Pl.s' Opp.* at 19:9-11 (citing *Abdulkhalik Depo.* at 39:16–21; *Braverman Depo.* at 31:12–32:14; *Envent Depo.* at 30:23–31:6; *McBeth Depo.* at 32:10–14; *McMurrin Depo.* at 130:5–7).) Despite slamming Plaintiff's head into the ground, Plaintiff asserts that McMurrin "never bother to tell Officers Davis and Rozsa that Mr. Abdulkhalik had hit his head during the arrest. . . . Nor did he assess Mr. Abdulkhalik for injuries," which are facts that McMurrin admits. (*Id.* at 19:9–15 (citing *McMurrin Depo.* at 138:7–10, 137:15–17).) Moreover, Plaintiff cites to evidence that McMurrin has received training on recognizing blunt head trauma, the injury Plaintiff was ultimately diagnosed with. (*McMurrin Depo.* at 47:21–49:13.) These facts combined with the fact that Plaintiff suffered visible injuries to his face and began complaining of those injuries immediately after being transferred from McMurrin's custody to Officers Davis and Rozsa's custody are sufficient to create a triable issue of fact that McMurrin was deliberately indifferent. If Plaintiff can demonstrate to a jury that McMurrin slammed Plaintiff's head into the ground in the fashion described by Plaintiff and the eye witnesses, a jury could infer that McMurrin was on notice that medical care was necessary. Because McMurrin concedes that he did not obtain medical care for Plaintiff or inform Officers Davis and Rozsa of the need for medical care, there is at least a triable issue of fact that McMurrin acted with

1  deliberate indifference. In light of the foregoing, the Court finds that there is a triable issue of fact on

2  Plaintiff's deliberate indifference claim. Accordingly, the Court hereby **DENIES** Defendant's Motion

3  for Summary Judgment on the deliberate indifference claim.

4  **2.      Motion for Judgment on the Pleadings**

5         *A.      Legal Standard*

6         A motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c),

7  challenges the legal sufficiency of the opposing party's pleadings after the pleadings are closed.

8  Judgment on the pleadings is appropriate "when the moving party clearly established on the face of

9  the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment

10 as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th

11 Cir. 1989). All allegations of fact by the party opposing the motion are accepted as true, and construed

12 in the light most favorable to that party. *General Conference Corp. of Seventh-Day Adventists v.*

13 *Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

14        *B.      Plaintiff's Monell Claim*

15        Plaintiff asserts a cause of action against the City of San Diego pursuant to 42 U.S.C. § 1983.

16 Defendant City of San Diego contends that Plaintiff has failed to state a claim such that it can be held

17 liable as a municipality under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

18        Municipalities are generally immune from suit except for Section 1983 claims "when execution

19 of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

20 may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. Dep't of Soc. Servs.*,

21 436 U.S. 658, 694 (1978). "Neither a municipality nor a supervisor, however, can be held liable under

22 § 1983 where no injury or constitutional violation has occurred." *Jackson v. City of Bremerton*, 268

23 F.3d 646, 653–54 (9th Cir. 2001). In particular, to prevail in a civil rights claim against a municipality

24 under *Monell*, a plaintiff must allege facts that (1) the local government official(s) intentionally

25 violated the plaintiff's constitutional rights; (2) the violation was part of one of the municipality's

26 policy or custom and not an isolated incident; and (3) there is a link between the specific policy or

27 custom to the plaintiff's injury. *Monell*, *supra*, 436 U.S. at 690–92. A plaintiff has alleged sufficient

28 facts to assert a *Monell* claim "'even if the claim is based on nothing more than a bare allegation that

the individual officers' conduct conformed to official policy, custom, or practice.'" *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Shah v. County of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986)).

Here, Plaintiff's allegations are sufficient under the standards set forth *supra*. Specifically, Plaintiff alleges:

> Defendant City of San Diego effectively has condoned and ratified the use of excessive and unnecessary force and other violations of constitutional rights of persons in San Diego by failing to thoroughly investigate such violations, punish those responsible, and modify its training, procedures, and policies to prevent the recurrence of same, which caused the violation of Kassim Abdulkhalik's rights. By ratifying and condoning the violation of its citizens' constitutional rights, including the rights of Mr. Abdulkhalik, Defendant City of San Diego has encouraged the future use of excessive force and other constitutional violations.

(*FAC* [Doc. No. 12] at ¶ 22.) Plaintiff alleges that the City has adopted a custom or policy of failing to investigate violations of constitutional rights or modify its training, procedures, and policies to prevent future constitutional violations. Plaintiff alleges that by adopting this policy, the City has essentially condoned and ratified the use of excessive and unnecessary force, which led to the injuries ultimately alleged by Plaintiff. Plaintiff also alleges facts to support his allegations that the City indeed has such a policy by alleging facts that McBeth filed a complaint of harassment with the San Diego Police Department against McMurrin, but that "the SDPD never contacted Mr. Abdulkhalik in connection with this complaint and never bothered to tell Mr. McBeth how his complaint was addressed – if at all." (*Id.* at ¶ 16.) Plaintiff's allegations are sufficient to state a claim for liability under *Monell*. Thus, the Court hereby **DENIES** Defendants' motion for judgment on the pleadings on this claim.

In its reply brief, the City attaches the Declaration of Executive Assistant Chief David Ramirez. (Doc. No. 53–2.) Essentially, the Declaration, as well as the exhibits attached to the Declaration, discuss the policy and procedures of the City and seek to serve as evidence that the City did not maintain the policy alleged by the Plaintiff in the FAC. In the Reply brief, the City requests that "Plaintiff . . . respond to the Declaration of Executive Assistant Chief Ramirez . . . in a summary judgment context." (*Reply* [Doc. No. 53] at 9:6–9.) The City goes on to state: "The Court could permit Plaintiff additional time to attempt to identify whatever policies he claims were violated in this case."

1  (*Id.* at 9:9–10.) The City failed to move for summary judgment on the *Monell* claim in its initial

2  motion. Raising such an argument for the first time in a reply brief is inappropriate and will not be

3  considered by the Court. *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("the district court

4  need not consider arguments raised for the first time in a reply brief."). Accordingly, the Court

5  declines the City's request.

6  **3.      Dismissal of all claims against Doe Defendants**

7          Defendants seek dismissal of the Doe Defendants pursuant to Federal Rule of Civil Procedure

8  4(m). Rule 4(m) states: "If a defendant is not served within 120 days after the complaint is filed, the

9  court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice

10  against the defendant." Fed. R. Civ. P. 4(m). To date, no additional Doe Defendants have been named.

11  Plaintiff does not oppose this aspect of Defendants' motion. Accordingly, because the Doe defendants

12  have not been served within the requisite time period under Rule 4(m), and Plaintiff does not oppose

13  the motion, the Court hereby **GRANTS** Defendants' Motion to Dismiss all claims against the Doe

14  Defendants.

15                                   C̲O̲N̲C̲L̲U̲S̲I̲O̲N̲

16          Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART**

17  Defendant's Motion for Summary Judgment (Doc. No. 44). The Court also **DENIES** Plaintiff's Ex

18  Parte Motion for Leave to File a Sur-Reply (Doc. No. 55).

19          **IT IS SO ORDERED**.

20  DATED:  November 25, 2009

21

22                                                      Hon. Michael M. Anello
                                                        United States District Judge
23

24

25

26

27

28